IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE POULOS<br>GUARDIAN OF STEVEN WINTER<br>102 First Street, #204<br>Hudson, Ohio 44236 | )<br>)<br>)<br>)<br>) | CASE NO:<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | |
| CURE MEDICAL, LLC.<br>3471 Via Lido, Suite 211<br>Newport Beach, CA 92663 | )<br>)<br>)<br>) | **COMPLAINT** |
| and | )<br>) | **Jury Trial Demand Endorsed Hereon** |
| ANN ELIZABETH KENOWSKY<br>2113 Seville Avenue<br>Newport Beach, CA 92661 | )<br>)<br>) | |
| and | ) | |
| JOHN ANDERSON<br>1434 Eastlake Mead Parkway, Suite 210<br>Henderson, NV 89015 | )<br>)<br>) | |
| and | ) | |
| SUNNIE KENOWSKY<br>3471 Via Lido, Suite 211<br>Newport Beach, CA 92663 | )<br>)<br>) | |
| and | ) | |
| LOREN McFARLAND<br>3471 Via Lido, Suite 211<br>Newport Beach, CA 92663 | )<br>)<br>) | |
| and | ) | |
| TIMOTHY PALMER<br>3471 Via Lido, Suite 211<br>Newport Beach, CA 92663 | )<br>)<br>) | |
| and | )<br>) | |

ROBERT YANT )
3471 Via Lido, Suite 211 )
Newport Beach, CA 92663 )
                                        )
                 Defendants )

Now comes the Plaintiff, George Poulos as Guardian of Steven Winter (hereinafter "Winter") and for his Complaint against the Defendants, Cure Medical, LLC, (hereinafter "Cure"), Ann Elizabeth Kenowsky, John Anderson, Sunnie Kenowsky, Loren McFarland, Timothy Palmer and Robert Yant, alleges as follows:

### I. THE PARTIES

1. In a Letter of Guardianship, dated October 4, 2018, the Probate Court of Summit County, Ohio, appointed George L. Poulos Guardian ("Guardian") of Winter. Through the Letter, the Court also declared Winter incompetent based on a Statement of Expert Evaluation, dated June 29, 2018. The copy of the Letter of Guardianship is attached as Exhibit A and a copy of the Statement of Expert Evaluation is attached as Exhibit B.

2. On April 16, 2019 and January 5, 2021, the Court of Common Pleas, Probate Division, Summit County, Ohio, granted Motions to Approve Attorney Fee Agreements brought by the Guardian, and ordered that the Guardian had authority to sign the fee agreements and hire counsel to investigate the claim of Winter for stock ownership in Cure, LLC. A copy of the Orders are attached as Exhibits C-1 and C-2.

3. Cure is registered with the California Secretary of State as a limited liability company and its principal place of business is located at 3471 Via Lido, Suite 211, Newport Beach, California, 92663. Its stated business purpose is a manufacturer and distributor of urological and medical devices and accessories. A copy of Cure's Articles of Organization is attached as Exhibit D.

4. Ann Elizabeth Kenowsky is the President and a shareholder member of Cure, LLC.

5. John Anderson is the Chief Executive Officer and a shareholder member of Cure, LLC.

6. Sunnie Kenowsky is a shareholder member of Cure, LLC.

7. Loren McFarland is a shareholder member of Cure, LLC.

8. Timothy Palmer is a shareholder member of Cure, LLC.

9. Robert Yant is a shareholder member of Cure, LLC.

## II. JURISDICTION AND VENUE

10. Winter, is a citizen and resident of Ohio.

11. Defendant, Cure, LLC, is a corporation organized and existing under the laws of the State of California with its principal place of business in Newport Beach, California. Among other things, Defendant is in the business of designing, manufacturing and distributing urological, medical devices and accessories.

12. Defendants, Ann Elizabeth Kenowsky, Sunnie Kenowsky, Loren McFarland, Timothy Palmer and Robert Yant, are all residents of California.

13. Defendant, John Anderson, is a resident of Nevada.

14. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states.

15. Personal jurisdiction over Defendant is proper because it has done business in the State of Ohio, has substantial and continuing contact with the State of Ohio, and derives substantial revenue from goods used and consumed within the State of Ohio.

16. Plaintiff's claims arise out of Defendant's purposeful contacts with Ohio.

17. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

### III. NATURE OF THE ACTION

18. This is a shareholder action. Steven Winter has a valid equitable ownership interest in Cure, and all of its subsidiaries, via an enforceable option contract (hereinafter "the Contract") signed by the president of Cure and its founder on April 1, 2008. A copy of the Contract is attached as Exhibit E.

19. The terms of the Contract provided Winter, who was working under a consulting services agreement with Cure, the ability to purchase 15% of Cure's equity in exchange for $1 and Winter's previous and ongoing efforts, on behalf of Cure, to change the U.S. Medicare policy ending the reuse of catheters. (In April 2008, the U.S. Department of Health and Human Services (HHS) eliminated the mandatory reuse of intermittent catheters)[1]

20. Cure and its shareholders refused to include Winter's equity interest in its corporate structure and claimed the Contract was invalid and unenforceable.

21. The Contract contained all the material contract terms required for a binding and enforceable contract, including the parties, the term of the option, the identity of the property, and the price and method of payment.

22. Through several discussions following the signing of the Contract, Cure and various shareholders acknowledged Winter's equity interest in the company, negotiated the 15% ownership percentage as stated in the Contract and sent correspondence to Winter confirming his ownership percentage.

---

[1] US National Library of Medicine National Institutes of Health

23. Cure has acknowledged Winter's ownership of Cure stock through its agents and directors. To date, Cure has breached its fiduciary duty to Winter by its corporate mismanagement, intentional disenfranchisement, denial of shareholder rights and denial of shareholder dividends and profits to Winter.

24. This is also a contract action. Steven Winter has a valid equity purchase option in Cure pursuant to the Contract.

25. The Contract contained all the material terms of an enforceable option contract; Winter as the optionee had the option to purchase 15% of Cure's equity in exchange for his efforts to change U.S. Medicare policy and $1, at any time, and the Contract was signed by Winter and Ann Kenowsky (hereinafter "Kenowsky"), the optionor and president of Cure.

26. On several occasions, Winter attempted to enforce the purchase option within a reasonable time and pursuant to the stated terms of the Contract, but Cure and its shareholders repudiated the Contract by claiming the contract was invalid and unenforceable.

### IV. FACTS COMMON TO ALL PARTIES

#### A. Litigant Background

27. This matter arose when, during an inventory of the assets of the Plaintiff, the Guardian discovered a potential asset, the Contract, an agreement that provided Winter the option to purchase a 15% equity ownership in Cure based on his previous services with Cure.

28. Upon determination that the Contract had not been enforced by Winter, the Guardian obtained counsel, Barry M. Ward, Esq., (Counsel), to represent the Plaintiff and resolve the matter.

29. Based upon previous discussions with Counsel regarding the Contract and Plaintiff's equitable ownership rights in Cure, counsel for Cure indicated, through written

correspondence, dated April 18, 2019, that the Contract was unenforceable and Plaintiff had no ownership in Cure. A copy of counsel's letter is attached as Exhibit F.

### B. The Underlying Action

30. The Contract dated April 1, 2008, is a legally binding contract between Cure and Winter. Cure is bound to sell 15% of its equity for $1 based on Winter's previous and ongoing efforts, on behalf of Cure, to change the U.S. Medicare policy ending the reuse of catheters. In April 2008, the Centers for Medicare and Medicaid Services (CMS) of the HHS eliminated the mandatory reuse of intermittent catheters for outpatients who receive such prescriptions from doctors[2]. In short, CMS no longer required cleaning and reusing catheters at home for people who self-catheterized thereby creating a financial windfall that greatly impacted Cure's finances.

31. The Contract was signed by Kenowsky, President of Cure, and Bob Yant (hereinafter "Yant"), its founder.

32. Following the signing of the Contract, Winter repeatedly requested Cure and its shareholder representatives, including Yant, to acknowledge Winter's 15% equity interest under the terms of the Contract in the new corporate structure of Cure, which was in the process of incorporating. Although Winter's equity interest was acknowledged on several occasions by Cure representatives, it ultimately denied his purchase option and said purchase option was not included in the Cure corporate structure.

33. In an August 6, 2008 e-mail exchange, Winter asked Yant if he could send Winter the new structure of the company and Winter's contract. Yant acknowledged to Winter that, "Ann and I are fully committed to [Winter] being a part of Cure Medical. I hope we can get a signed contract with [Winter] before September", but Yant indicated that "the whole restructuring [of Cure] together has been very complex... and that we don't have the new

---

[2] US National Library of Medicine National Institutes of Health

structure yet to send to [Winter]." Yant further indicated that, "if we have a verbal agreement on the terms, I suppose we can get some money coming your way in September if the attorneys are finalizing the contract language. Bottom line: I have told you before that it is my intention to take care of you and your family." A copy of the August 6, 2008, e-mail is attached as Exhibit G.

34. In an August 27, 2008 e-mail exchange, Winter asked Yant if he would be handling the 15% ownership stock and Yant responded, "the company stock capitalization will be handled in a few weeks. We don't want to move too fast (at our attorney's advice) because we could accumulate legal fees which will once again stretch the company finances. So we will have a straight employment agreement with you so that you can begin on September 1st." Yant concluded the email expressing, "we need Steve Winter, the rainmaker!" A copy of the August 27, 2008 e-mail is attached as Exhibit H.

35. In an email dated January 28, 2009, John Anderson, Chief Executive Officer of Cure acknowledged to Winter his ownership in Cure when he indicated "Dear Steve, you own 10 percent of Cure". A copy of the January 28, 2009 email is attached as Exhibit I.

36. In a February 11, 2009, e-mail exchange, Loren McFarland (hereinafter "McFarland"), a representative of Cure, expressly acknowledged Winter's equity interest in Cure and proposed a cash offer to Winter for his ownership in Cure. Specifically, McFarland indicated, "please continue to consider my cash offer for your equity interest in Cure and consider if you can re-evaluate your lowest price." A copy of the February 11, 2009 e-mail is attached as Exhibit J.

37. In a February 26, 2009 e-mail, McFarland expressly acknowledged Winter's equity interest in Cure when he indicated to Winter, "You [Winter] think you own 15% for

7

$300,000 while we think it is 8.8%. That puts your buyout offer in the valuation range between $2 million and $3.4 million." A copy of the February 26, 2009 e-mail is attached as Exhibit K.

38. Moreover, in a February 27, 2009, e-mail follow-up, McFarland supported his previous acknowledgment of Winter's equity interest and indicated that, "the 8.8% offer that was made was calculated based upon Contract documentation. It was reviewed by others and agreed that it represented the situation well." Although McFarland, in the same e-mail, claimed that his 8.8% calculation was not a validation of Winter's claim under the terms of the Contract, but only an explanation. A copy of the February 27, 2009 e-mail is attached as Exhibit L.

39. In a March 23, 2009 e-mail, McFarland provided notice to Winter that all agreements between Winter and Cure and its subsidiaries were terminated as of March 31, 2009. A copy of the March 23, 2009 e-mail is attached as Exhibit M.

### C. Enforceable Option Contract

40. In the alternative, the April 1, 2008, Contract is an enforceable option contract because upon the making of the option contract, the Contract created a binding contractual promise on behalf of Cure to sell a portion of its equity to Winter in exchange for the conditions precedent of Winter paying - $1 and his efforts to change U.S. Medicare policy. See Exhibit E.

41. Through its many refusals to perform under the terms of the option contract, Cure has repeatedly repudiated the contract and, as a result, Plaintiff treated these repudiations as negotiations, waited until the time for performance arrived to enforce his remedy for actual breach of contract.

42. The Contract contained all the material terms of an enforceable option contract;

    A. The Contract was signed by Cure executives, Kenowsky and Yant;

    B. It specifically stated the term of the option as not expiring;

        C.      It identified the property as 15% of Cure's equity in exchange for $1; and

        D.      The ongoing performance of Winter to change the U.S. Medicare Code ending the reuse of catheters.

43.     In April 2008, the CMS of the HHS eliminated the mandatory reuse of intermittent catheters for outpatients who receive such prescriptions from doctors[3]. Despite this change in U.S. Medicare policy, which was a clear condition precedent accepted by Cure under the terms of the Contract, Cure continually repudiated the efforts of Winter to execute his purchase option.

44.     During an April 6, 2009 e-mail exchange, McFarland, a representative of Cure, repudiated the Contract by indicating, "In the course of our recent conversations, we have reviewed both your and our legal and ethical positions, and feel very justified in our conclusions. We have concluded that: . . . you are not entitled to any equity interest in Cure Medical, LLC as there is no agreement." A copy of the April 6, 2009 email is attached as Exhibit N.

45.     During an April 16, 2010 e-mail exchange, Winter expressly attempted to enforce his purchase option when he asked Yant, ". . . does Cure Medical plan to honor the contract? . . . I can have my accountant send the check to Cure and he can speak with Loren on how to transfer the 15%." Bob Yant, however, repudiated the purchase option and claimed, "We are unable to make a contribution at this time. We are willing to look at this in six months. . ." A copy of the April 16, 2010 email is attached as Exhibit O.

46.     In a 2014 letter sent to Cure, Winter again attempted to enforce his purchase option by sending a check for $1, but Cure repudiated the contract and claimed it was invalid and unenforceable. See April 18, 2019 letter from counsel attached as Exhibit F.

---

[3] Ibid

## COUNT ONE
## Breach of Fiduciary Duty

47. Plaintiff incorporates by reference the allegations on Paragraphs 1 through 46 as though fully rewritten herein.

48. As directors and/or officers of Cure each of the Defendants owe fiduciary duties of care, loyalty and good faith to the Company's stockholders including Winter. Defendant's fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of the Company's business, to discharge their actions in good faith, to act in the best interests of the Company and its stockholders and to put the interest of the Company before their own.

49. Defendants have breached and continue to breach their fiduciary duty of care by among other things, routinely mismanaging the Company and failing to comply with the applicable corporate duties owned to shareholders.

50. Defendants have breached and continue to breach their duties of loyalty and good faith by failing to honor Plaintiff's minority shareholder rights by freezing him out of the corporation and oppressing his rights as a shareholder.

51. The breaches of fiduciary duty of the directors and/or officers of Cure and freeze out are outlined at Paragraphs 30 – 46 herein.

52. As a result of the above referenced conduct, Winters has suffered and will continue to suffer damages by the Defendants breach of their fiduciary duties and freeze out.

WHEREFORE, Plaintiff, George Poulos as Guardian of Steve Winters prays as follows:

A) Judgment in his favor and against the Defendants in an amount of compensatory damages in excess of $75,000.00;

B) Attorney fees and costs to extent allowed by law, and

C) For such other and further relief this Court deems necessary, just and proper.

Respectfully submitted,

/s/ Barry M. Ward
BARRY M. WARD, 0014991
BARRY M. WARD CO., LPA
Attorney for Plaintiff
304 N. Cleveland-Massillon Road
Akron, OH 44333
(330) 535-1555

## JURY DEMAND

The Plaintiff demands a Trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

/s/ Barry M. Ward
BARRY M. WARD, 0014991
Attorney for Plaintiff

## EXHIBIT LIST

A. Letters of Guardianship

B. Statement of Expert Evaluation

C-1 Fee Agreement to Hire Counsel

C-2 Fee Agreement to Hire Counsel

D. Cure Medical, LLC, Articles of Organization

E. April 1, 2008, Equity/Option Contract

F. 04/18/2019, Letter from Counsel Re: Ownership Interest

G. Email 08/06/2008; Confirmation of Ownership Interest

H. Email 08/27/2008; Acknowledgement of Ownership Interest

I. Email 01/28/2009; Acknowledgement of Ownership Interest

J. Email 02/11/2009; Ownership Interest Purchase Negotiations

K. Email 02/26/2009; Acknowledgement of 8.8% Ownership Interest

L. Email 02/27/2009; Further Confirmation of Ownership Interest

M. Email 03/23/2009; Termination of Consulting Agreement

N. Email 04/06/2009; No Equitable Interest in Cure Medical, LLC

O. Email 04/16/2010; We are willing to look at this in six (6) months